Filed 3/2/23  C.T. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| C.T.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>Respondent;<br><br>KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Real Party in Interest. | F085283<br><br>(Super. Ct. Nos. JD134630-02, JD134632-02)<br><br>**OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Susan M. Gill, Judge.

C.T., in pro. per., for Petitioner.

No appearance for Respondent.

Margo A. Raison, County Counsel, and Judith M. Denny, Deputy County Counsel, for Real Party in Interest.

---

[*]    Before Levy, Acting P. J., Meehan, J. and Snauffer, J.

-ooOoo-

C.T. (mother), in propria persona, seeks an extraordinary writ (Cal. Rules of Court, rules 8.450−8.452) from the juvenile court's orders issued at a contested dispositional hearing (Welf. & Inst. Code, § 358)[1] on November 15, 2022, terminating reunification services and setting a section 366.26 hearing on March 15, 2023, as to her now nine-year-old daughter, S.D.R., and seven-year-old daughter, S.R.[2] Mother contends the juvenile court erroneously terminated reunification services because it determined she exceeded the statutory limit on services, which she argues was not her fault. She also contends she participated in her case plan, including mental health services. She seeks an extraordinary writ directing the juvenile court to vacate the section 366.26 hearing and order reunification services. We conclude the juvenile court erred in not ordering family reunification services and grant the petition.

## FACTUAL AND PROCEDURAL SUMMARY

### A. Prior Child Welfare History

Mother has a long history of substance abuse, untreated mental illness and child welfare intervention. In 2002, she pled nolo contendere to possession of a controlled substance and was required to register as a narcotics offender in Kern County. In March 2009, her then three-year-old son, D.T., and his 11-year-old half brother, Brian E., were taken into protective custody by law enforcement after mother was arrested for

---

[1]     Statutory references are to the Welfare and Institutions Code.

[2]     In addition to S.R. and S.D.R., mother named a third child, her son D.T., as a subject of the writ petition. However, although D.T. was removed with S.R. and S.D.R. and his dependency case tracked theirs, the juvenile court did not set a section 366.26 hearing in his case at the November 15, 2022, hearing but ordered him into long-term foster care. Any claims of error mother may have as to D.T. were reviewable by direct appeal rather than by writ petition. Had mother identified D.T. on her notice of intent, we may have construed the notice of intent as to him as a notice of appeal and established a separate case on appeal. However, she did not and we are precluded from reviewing the juvenile court's orders regarding D.T. on this writ petition.

being under the influence of phencyclidine (PCP). Mother was ordered to participate in reunification services, which included substance abuse and mental health treatment and submit to random drug testing. In January 2011, the juvenile court conducted a section 366.26 hearing and ordered Brian and D.T. into a legal guardianship. In July 2012, the court returned D.T. to mother's custody under a plan of family maintenance. In January 2013, the case was dismissed, and mother was awarded sole legal and physical custody of D.T.

In January 2015, law enforcement responded to a domestic violence incident at mother's home. She reported that Samuel R. (S.R. and S.D.R.'s father) hit her in the face and shoved her into a closet. She was six months pregnant with S.R. Samuel then picked up S.D.R., pulled out a knife and left, telling mother not to follow him. Samuel was arrested. After the police responded two more times for domestic violence in April 2015, the department filed dependency petitions on the children's behalf alleging the parents' domestic violence and mother's mental illness placed the children at risk of harm. The petition specifically alleged that mother punched D.T. with a closed fist, causing his lip to bleed, displayed paranoid behavior and had untreated bipolar disorder. It also alleged she tested positive for PCP and pled nolo contendere to possession of a narcotic. In October 2015, at the dispositional hearing, the court placed the children with mother under a plan of family maintenance that required her to participate in counseling for physical abuse as a perpetrator, substance abuse and failure to protect. She was also ordered to submit to random drug tests. In April 2016, the juvenile court terminated its dependency jurisdiction and granted mother sole legal and physical custody.

In June 2017, then 10-year-old D.T., three-year-old S.R. and two-year-old S.D.R. were taken into protective custody by the police after they found mother walking around in the middle of the night with D.T. and her then four-year-old son, Tyler H. When the officers attempted to speak to her, she ran into a motel lobby dragging the children. After a brief resistance, she was arrested. The officers suspected she was under the influence

3.

of methamphetamine because she was sweating profusely, and had dilated pupils and fluttering eyelids. When the officers arrived at mother's home, they found S.R. and S.D.R. inside with the door locked and the stove on. There was very little food for the children and the home was dirty with soiled diapers scattered around the floor. Mother also reportedly scratched the children, using a pin from a name tag and poked their skin with tweezers. At the dispositional hearing in January 2018, the juvenile court placed the children in mother's custody with family maintenance services, which required her to participate in mental health counseling and submit to random drug tests. In September 2018, the juvenile court terminated its dependency jurisdiction and awarded mother sole legal and physical custody.

## B.     Current Dependency Proceedings

### 1.  Initial Removal

In March 2021, mother led highway patrol in a high-speed chase, driving 101 miles per hour with the children in the car. The patrol officer placed a spike strip on the road to stop her. Even then, mother remained in the car with the children for 30 minutes, refusing to exit. She was arrested and involuntarily detained on a psychiatric hold and the children were placed with a relative. During her detention, mother was diagnosed with schizophrenia. On June 12, 2021, while sheriff's deputies were at mother's home regarding a civil dispute over child custody, the children told the deputy mother cut them with a knife and burned them to ward off demons. Mother was arrested and the children were taken into protective custody by the Kern County Department of Human Services (department).

The department filed a dependency petition on the children's behalf, alleging under section 300, subdivision (b) that mother's untreated mental illness placed them at a substantial risk of harm. It further alleged she was incarcerated and left the children without support and neglected their siblings. (§ 300, subds. (g) & (j).) Samuel was incarcerated in state prison. The children were placed in foster care.

4.

### 2. Detention Hearing: June 16, 2021

The juvenile court ordered the children detained in June 2021, ordered the department to provide reunification services as soon as possible and ordered supervised visitation for the parents. At a combined jurisdiction and disposition hearing in November 2021, the court appointed a guardian ad litem for mother and continued the hearing to January 2022.

On January 13, 2022, the social worker met with mother to discuss her case plan. Mother stated the juvenile court did not order her to do anything. The social worker agreed it was voluntary.

### 3. Jurisdiction and Disposition Hearing: January 19, 2022

The juvenile court conducted a jurisdictional hearing on January 19, 2022, sustained the allegations, adjudged the children dependents of the court and set the dispositional hearing for March 2022. The court appointed Drs. Gary Longwith and Carol Matthews to perform psychological evaluations of mother and determine whether she has a mental health disability that renders her unable to benefit from reunification services. The evaluations were conducted in May 2022.

Meanwhile, on February 24, 2022, a social worker spoke to mother on the telephone about her case plan. She told mother her voluntary case plan consisted of parenting/neglect counseling, a mental health evaluation and treatment and random drug counseling. On March 1, 2022, mother said she was signed up for parenting classes. On April 29, 2022, mother declined to drug test unless court ordered and had not started her parenting class but was attending substance abuse counseling.

### 4. Psychological Evaluations: May 2022

Drs. Longwith and Matthews opined that mother was not likely to benefit from reunification services. Dr. Longwith reported there were no clear mental health issues identified in the testing but gave her a diagnosis of posttraumatic stress disorder. He stated her primary issue involved substance abuse, the impact of which she minimized.

She appeared to take no responsibility for any of the past or current issues or incidents of abuse and/or neglect experienced by her children. Dr. Matthews opined mother has a mental illness, "but her denial makes it difficult to confirm the distinctness of her disorder and the possibility of successful reunification. This coupled with her significant CPS history, removal of her children, continued abuse of the children, her current incarceration, lack of taking responsibility for her actions, her children being fearful of her, and lack of insight [in]to her mental health issues, it is my opinion that [mother] is unlikely to benefit from reunification services."

     5. *Department Recommended Denial of Reunification Services for Mother*

On June 30, 2022, a social worker met with mother at the pretrial detention facility to discuss her case plan. The social worker explained to mother that her official reunification services would begin when the juvenile court conducted the dispositional hearing. Mother stated a counselor at the jail diagnosed her with posttraumatic stress disorder not schizophrenia or bipolar disorder.

In a supplemental report prepared in June 2022 for the dispositional hearing, the department recommended the juvenile court deny mother reunification services under section 361.5, subdivision (b)(2) based on the results of her psychological evaluations and under section 361.5, subdivision (e)(1) because she was incarcerated and unable to reunify within the statutory timeframe. The department noted S.R. and S.D.R. had been removed from mother's custody three times and were placed in separate foster homes. It believed they were likely to be adopted. The department recommended against ordering reunification services for Samuel.

On October 26, 2022, a social worker met with mother at her home to discuss her voluntary case plan. She reminded mother the plan consisted of a 52-week parenting/child neglect program, a mental health assessment and recommended treatment and random drug and alcohol testing. Mother completed a spot test and tested negative. In a supplemental report prepared in November 2022, just before the hearing, the

department reported that S.R. and S.D.R. initially did not want to visit mother. Because mother was incarcerated, the department did not make any effort to facilitate visitation. However, more recently, the girls expressed an interest in visiting mother.

*6. Dispositional Hearing: November 15, 2022*

Mother appeared out-of-custody at the contested dispositional hearing, having been discharged sometime in October 2022. Samuel testified he would be resentenced in January 2023.

Social worker Maria Tinoco testified mother successfully reunified with her children every time they were removed. However, mother had a pattern of behavior that necessitated their removal, and the psychologists did not believe she would benefit from services. S.R. and S.D.R. were not placed together because there were difficulties between the two girls.

*7. The Juvenile Court's Findings*

The juvenile court stated it was not going to bypass mother for services but was also not going to continue them. The court stated,

> "We're not at the beginning of this case, we're at the end of this case. And we're not even at six months in this case, we're past 12 months in this case. And for me to make findings to extend reunification services to the 18-month period of December 11, [2022] I have to find with some confidence that reunification will work. And I have no confidence whatsoever that reunification will work for these children, so I can't do that."

The juvenile court continued,

> "[W]ithout any regard to [the psychologists' reports], it is clear to me from the other evidence in this case that [m]other has some serious mental health issues that need to be treated before these children could be returned to her safely. [¶] The children had night terrors. They had nightmares …. [¶] [T]hese children are finally, after all this time, feeling safe. They feel safe enough to visit with their mother in person because they know they're then going back to their safe place …."

7.

The juvenile court ordered the children removed from mother's custody, terminated services and set a section 366.26 hearing.

## DISCUSSION

*A. The Juvenile Court Erred in Not Ordering Reunification Services for Mother*

Upon its removal of a child from parental custody at the dispositional hearing, the juvenile court is required under section 361.5, subdivision (a) to provide reunification services, as relevant here, to the child and the child's mother unless the court finds by clear and convincing evidence that one of the exceptions listed in subdivision (b) exists. If the court orders family reunification services in the case of a child who was three years of age or older when taken into protective custody, section 361.5, subdivision (a)(1)(A) requires the court to provide services beginning with the dispositional hearing and ending 12 months after the child entered foster care. A child is deemed to have entered foster care either on the date of the jurisdictional hearing or 60 days after the date of the child's removal, whichever occurs first. (§ 361.49.)

The department acknowledges that the services offered mother at the detention hearing were voluntary and argues the juvenile court's order terminating them was in effect a denial of services under section 361.5, subdivision (a)(1)(A). We find that argument to be meritless. First, it ignores the fact that an order for family reunification services is the default at the dispositional hearing unless one of the exceptions contained in subdivision (b) of section 361.5 applies. Here, the court did not find any of the section 361.5, subdivision (b) bypass provisions applied. Further, section 361.5, subdivision (a)(1)(A) is *not* an exception authorizing a denial of family reunification services. Rather, it serves to establish a limit on their duration once ordered. The fact that voluntary services were made available to mother from the detention hearing in June 2021 to the disposition hearing 17 months later in November 2022 does not equate to the provision of court-ordered family reunification services. The court erred in not ordering mother reunification services at the dispositional hearing.

8.

Further, the juvenile court's failure to order reunification services was prejudicial. Section 361.5, subdivision (b)(2), the only plausibly applicable bypass provision, pertains when "the parent … is suffering from a mental disability … described in … the Family Code and that renders the parent … incapable of utilizing those services." Family Code section 7827, subdivision (a) defines the " 'mentally disabled' " parent as one suffering a mental incapacity or mental disorder that renders the parent unable to adequately care for and control the child. A finding of mental disability must be supported by the opinion of two mental health experts who meet the qualifications set forth in Family Code section 7827, subdivision (c). Although Drs. Longwith and Matthews, as licensed psychologists, qualified under the statute as mental health experts, and both opined mother was not likely to benefit from reunification services, neither could identify a specific mental health problem that she suffered. Dr. Longwith assigned a diagnosis of posttraumatic stress disorder but only because mother told him she had previously received that diagnosis. Dr. Matthews believed mother has a mental illness but was unable to diagnose it and did not offer a mental health diagnosis. In the absence of an opinion by these two mental health experts that mother suffers from a mental disability, the court could not have bypassed her for reunification services under section 361.5, subdivision (b)(2) by clear and convincing evidence. Therefore, the writ petition must be granted.

The department concedes and we agree that the remedy for erroneous denial of reunification services to a parent is an order for reunification services. (*In re M.S.* (2019) 41 Cal.App.5th 568, 593−594.) We are cognizant that by the dispositional hearing in November 2022, mother had 17 months beginning with the detention hearing in June 2021 to take advantage of the voluntary reunification services offered. We are also aware that the juvenile court will necessarily have to exceed the statutory mandate on provisions of reunification services in order to grant mother what she is rightfully due by statute. Nevertheless, a strict enforcement of the timeline does not comport with the

9.

result intended by the Legislature where no reunification plan was ever ordered.  (*M.S.*, at p. 595.)  We therefore conclude mother is entitled to appropriate reasonable reunification services for a minimum period of six months (*Id*. at p. 596), barring evidence that would support one of the bypass provisions under section 361.5, subdivision (b).

## DISPOSITION

The petition for extraordinary writ is granted.  Let an extraordinary writ issue, directing the juvenile court to vacate its order entered on November 15, 2022, setting a section 366.26 hearing.  The court is further directed to conduct a new dispositional hearing and, after taking into consideration any new evidence or change in circumstances, make any appropriate orders.  Our decision is immediately final as to this court.  (Cal. Rules of Court, rules 8.456(h)(5) & 8.490(b)(2)(A).)